1  J. Andrew Coombs (SBN 123881)
   *andy@coombspc.com*
2  Annie S. Wang (SBN 243027)
   *annie@coombspc.com*
3  J. Andrew Coombs, A Prof. Corp.
   520 East Wilson Ave., Suite 200
4  Glendale, California 91206
   Telephone:  (818) 500-3200
5  Facsimile:  (818) 500-3201

6  Michael W.O. Holihan (pending *pro hac* admission)
   *michael.holihan@holihanlaw.com*
7  Holihan Law
   1101 North Lake Destiny Road, Suite 275
8  Maitland, FL 32751
   Telephone:  (407) 660-8575
9  Facsimile:  (407) 660-0510

10 Attorneys for Plaintiff Nike, Inc.

11              UNITED STATES DISTRICT COURT

12              CENTRAL DISTRICT OF CALIFORNIA

13 NIKE, INC.,                         )   Case No.
                                       )
14                                     )
              Plaintiff,               )   COMPLAINT FOR TRADEMARK
15      v.                             )   COUNTERFEITING,
                                       )   TRADEMARK INFRINGEMENT,
16 KAL AMERICA, INC., PROWAY           )   FALSE DESIGNATION OF
   FORWARDING, INC., CAPITAL           )   ORIGIN, IMPORTATION OF
17 FREIGHT MANAGEMENT INC., AND        )   GOODS BEARING
   VARIOUS JOHN DOES, JANE DOES        )   INFRINGING MARKS, AND
18 and XYZ COMPANIES, inclusive,       )   VIOLATION OF TARIFF ACT
                                       )
19            Defendants.              )   DEMAND FOR A JURY TRIAL
                                       )
20                                     )

21

22        Plaintiff NIKE, Inc. (hereinafter referred to as "Nike"), by its attorneys J.

23 Andrew Coombs, A Prof. Corp. and Holihan Law allege on knowledge as to its own

24 acts and otherwise on information and belief as follows:

25

26

27

28

**NATURE OF THE ACTION**

1.     This is an action for trademark counterfeiting, trademark infringement, false designation of origin, and the unlawful importation of goods bearing infringing/counterfeit marks in violation of the laws of the United States and the violation of the Tariff Act.  Nike seeks an injunction, damages and related relief.

**JURISDICTION AND VENUE**

2.     The Court has jurisdiction over this matter pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, and 1338.  Plaintiff's claims are predicated upon the Lanham Trademark Act of 1946, as amended, 15 U.S.C. § 1051, et seq. and Tariff Act, 19 U.S.C. § 1526(a).  Venue is properly founded in this district pursuant to 28 U.S.C. § 1391 (b) and (c).

**THE PARTIES**

3.     Nike is an Oregon corporation and maintains its principal place of business at One Bowerman Drive, Beaverton, Oregon 97005.

4.     Defendant KAL America, Inc. (hereinafter referred to as "KAL") is a California corporation whose principal place of business is 803 S. Inglewood Avenue, Inglewood, CA 90301.  KAL is a licensed customs broker that transacts business in and/or has contracted to import, distribute, transport, or assist in the importation, distribution, and/or transportation of the infringing and counterfeit goods at issue in California and in this judicial district, and that regularly conducts customs business within this judicial district.

5.     Defendant Proway Forwarding, Inc. (hereinafter referred to as "Proway") is a California corporation whose principal place of business is 1111 Corporate Center Drive, Suite 103, Monterey Park, CA 91754.  Proway is a freight forwarder who provides transportation services for, among others, goods being shipped from China to the United States.  Proway transacts business in and/or has contracted to import, distribute, transport, or assist in the importation, distribution, and/or

transportation of the infringing and counterfeit goods at issue in California and in this judicial district, and that regularly conducts customs business within this judicial district.

6.      Defendant Capital Freight Management Inc. (hereinafter referred to as "Capital Freight") is a California corporation whose principal place of business is 2501 Davidson Drive, Suite 300, Monterey Park, CA 91754.  Capital Freight is a licensed freight forwarder and Non-Vessel Operating Common Carrier ("NVOCC") who provides freight forwarding services for, among others, goods being shipped from China to the United States.  Capital Freight transacts business in and/or has contracted to import, distribute, transport, or assist in the importation, distribution, and/or transportation of the infringing and counterfeit goods at issue in California and in this judicial district, and that regularly conducts customs business within this judicial district.

7.      Due to the nature of the Defendants' business practices, the identity of the various John Does, Jane Does and XYZ Companies is not presently known, with the exception of KAL, Proway, and Capital Freight.  The Complaint herein will be amended, if appropriate, to include the name or names of said individuals and/or entities when such information becomes available (KAL, Proway, Capital Freight, and the various John Does, Jane Does and XYZ Companies will hereinafter be collectively referred to as "Defendants").

## NIKE'S FAMOUS TRADEMARKS

8.      Since 1971, Nike has advertised, offered for sale, and sold footwear and other related products throughout the United States.  Nike's sneakers have been widely advertised, offered for sale and sold throughout the United States under various distinctive trademarks, including "NIKE," "NIKE AIR," the distinctive "Swoosh" Design, which sometimes is used in conjunction with the "NIKE" trademark or the "NIKE AIR" trademark, and the "Jumpman" Design trademark.

The Nike trademarks have at all relevant times been owned by Nike or its predecessor.

9.     As a result of their exclusive and extensive use, the Nike trademarks have acquired enormous value and recognition in the United States and throughout the world.  The Nike trademarks are well known to the consuming public and trade as identifying and distinguishing Nike exclusively and uniquely as the source of origin of the high quality products to which the marks are applied. The Nike trademarks are both inherently distinctive and famous.

10.    The Nike trademarks registered in the United States Patent and Trademark Office for footwear include the following (hereinafter collectively the "Nike Trademarks"):

| MARK | DESIGN | REGISTRATION NO. | DATE OF ISSUANCE | CLASS |
|---|---|---|---|---|
| SWOOSH DESIGN | | 977,190 | 1/22/74 | 25 |
| NIKE | | 978,952 | 2/19/74 | 25 |
| SWOOSH | | 1,200,529 | 7/6/82 | 25 |
| NIKE | | 1,214,930 | 11/2/82 | 25 |
| NIKE AIR COMPOSITE MARK | | 1,284,386 | 7/3/84 | 25 |
| NIKE AIR | | 1,307,123 | 11/27/84 | 25 |
| SWOOSH DESIGN | | 1,323,342 | 3/5/85 | 25 |
| SWOOSH DESIGN | | 1,323,343 | 3/5/85 | 25 |
| NIKE COMPOSITE DESIGN | | 1,325,938 | 3/19/85 | 25 |
| SWOOSH AIR DESIGN | | 2,068,075 | 6/3/97 | 25 |

| JUMPMAN DESIGN |  | 1,558,100 | 9/26/89 | 25 |
|---|---|---|---|---|
| JUMPMAN DESIGN |  | 1,742,019 | 12/22/92 | 25 |
| AIR JORDAN | | 1,370,283 | 11/12/85 | 25 |
| AIR FORCE 1 | | 3,520,484 | 10/21/08 | 25 |

11.   Most of the foregoing registrations have achieved incontestable status pursuant to 15 U.S.C. § 1065.  Nike also owns numerous registrations for the Nike Trademarks for goods and services other than footwear.

## DEFENDANTS' WRONGFUL ACTIVITIES

12.   Defendants, without the consent of Nike, imported, distributed and transported, and/or arranged for, assisted in and/or caused the importation, distribution or transportation in interstate commerce of footwear bearing unauthorized reproductions, copies, counterfeits and colorable imitations of the Nike Trademarks.

13.   Goods do not legally enter the United States until U.S. Customs and Border Protection ("Customs") authorizes their importation.

14.   Goods brought to the United States may not be distributed or further transported domestically within the United States until Customs has cleared the goods for entry into the United States.

15.   A customs broker's action in filing entry documents allowing for the clearance of goods by Customs (and ultimately, the entry of the goods into the United States) is an integral part of the importation process as well as a prerequisite for the further distribution and transportation of such goods.

16.   A freight forwarder's provision of freight forwarding services for goods being shipped from China to the United States is an integral part of the transportation

and importation processes, as the freight forwarder causes and/or arranges for the transportation and importation of goods into the United States.

17.    On or around February 6, 2013, Defendants filed, or caused to be filed, entry documents with Customs entry number BRI-0023254-6 (hereinafter referred to as the "Fayco Entry"), allowing for the importation of Infringing Nike Product into the United States. A copy of the entry document filed by the Defendants in conjunction with the Fayco Entry is annexed hereto as Exhibit A.

18.    The Fayco Entry consisted of 9,456 pairs of Infringing Nike Product that were seized by Customs and valued at $347,004.00 (hereinafter the "Counterfeit Nike Footwear") and 2,800 infringing Nike labels (hereinafter "Infringing Nike Labels") (hereinafter collectively "Infringing Nike Product").  A copy of Customs' seizure notices to Nike concerning the Fayco Entry is annexed hereto as Exhibit B.  A photograph of a sample of the Counterfeit Nike Footwear has been annexed hereto as Exhibit C and a photograph of a sample of the Infringing Nike Labels has been annexed hereto as Exhibit D.

19.    The entry documents filed by KAL in conjunction with the Fayco Entry were fraudulent in that they falsely identified the Infringing Nike Product as "Polyresin Ceramic Ware", they falsely identified Fayco Industries Inc. (hereinafter referred to as "Fayco") of 3 Atlantic Street, Plainsboro, NJ 08536 as the Importer of Record and Ultimate Consignee for the Infringing Nike Product shipment, and they falsely stated that KAL was Fayco's attorney in fact authorized to file entry on Fayco's behalf.

20.    Fayco is engaged in the business of selling Butane Lighters.  Fayco is not in the business of importing counterfeit or authentic Nike footwear.  Upon information and belief, Fayco was a victim of identity theft, as the Defendants illegally used Fayco's name, address and Internal Revenue Service employer

identification number (EIN) in order to import the Infringing Nike Product into the United States.

21.    As a customs broker, KAL is licensed by Customs. Licensed customs brokers are authorized to formally enter goods into the United States on behalf of importers.

22.    The entry documents were filed, or caused to be filed, by Defendants and executed by KAL as attorney in fact for Fayco.

23.    In order to file the entry documents with Customs, KAL was required to have a valid customs power of attorney (hereinafter "POA") from Fayco.

24.    KAL was required to exercise due diligence in verifying their authority via the POA from Fayco (hereinafter referred to as "Fayco POA") and related shipping documentation.

25.    KAL was also required to use "reasonable care" in determining the nature of the goods covered by the entry documents to determine, among other things, whether the goods bore the trademarks of any U.S. company before filing, or causing to be filed, said entry documents with Customs.

26.    The United States Attorney has affirmed that a customs broker "must exercise reasonable care to ensure that a POA in his or her possession is valid", and directs customs brokers to Customs' publication on the Customs website for guidance as to methods by which brokers may validate a POA.  A copy of the U.S. Attorney's letter is annexed hereto as Exhibit E.

27.    Customs recommends that customs brokers validate a power of attorney by "hav[ing] POAs completed in person so the grantor's personal identification (driver's license, passport, etc.) can be reviewed".  Customs also recommends other methods by which brokers may validate POAs, including website searches. A copy of Customs' POA validation guidelines is annexed hereto as Exhibit F.  The guidelines

are also available on Customs' website at http://www.cbp.gov/trade/broker/validating-poa.

28.   Prior to the making of the Fayco Entry, KAL failed to make any inquiry as to the nature of the Infringing Nike Product, including a determination that the goods bore any Nike Trademarks.   KAL likewise failed to make any reasonable inquiry as to the source of the Fayco POA.

29.   Upon information and belief, KAL had no contact with any person at Fayco or anyone who represented they had any connection to Fayco or the Fayco Entry.

30.   Despite KAL's reference to the Fayco POA professing to give them authority to make the Fayco Entry, Fayco has denied that it ever executed a POA, had any relationship with KAL or had ever authorized KAL to act on its behalf concerning the importation of any goods.

31.   If KAL had exercised reasonable care and/or due diligence in validating the Fayco POA as recommended by Customs, it would have quickly determined that the POA was fraudulent and Fayco was not the actual importer of the Infringing Nike Product.

32.   Proway and Capital acted as the consignee and/or ocean transportation intermediary for the Counterfeit Nike Footwear and materially assisted in the transportation and importation of the Counterfeit Nike Footwear from China to the U.S.

33.   Proway and Capital Freight hired and paid to arrange and cause the clearance of the Fayco Entry through Customs so that the goods could distributed in commerce in the United States.   Upon information and belief, Proway and Capital Freight did this without having any direct contact with Fayco or anyone who represented they had any connection to Fayco or the Fayco Entry.

Nike v. KAL America, Inc.: Complaint

34.   Proway and Capital Freight passed on a false and fraudulent POA in Fayco's name to KAL.   Proway and Capital Freight also passed on false and fraudulent shipping documents concerning the Fayco Entry to KAL with the intent to cause KAL to then file the fraudulent documents with Customs.   Proway and Capital Freight knew or should have known that the Fayco POA and shipping document related to the Fayco Entry were false and fraudulent.

35.   Upon information and belief, at all material times Proway and Capital Freight had no direct contact with Fayco, and instead dealt with third parties with no real or apparent authority to authorize the Fayco Entry, or to pass on a POA in Fayco's name, or to possess any right to pass on shipping documents related to the Fayco Entry.

36.   Defendants knew or should have known that the Fayco POA that Proway and/or Capital Freight provided to KAL was fraudulent as Proway and/or Capital Freight did not obtain the Fayco POA from Fayco.

37.   Defendants' actions in filing and/or assisting in the filing of the fraudulent entry documentation related to the Fayco Entry constitutes the proximate cause of the importation of the Infringing Nike Product.

38.   By filing the fraudulent entry documentation and/or assisting in the filing of the fraudulent entry documentation concerning the Infringing Nike Product without authorization from Fayco, Defendants deemed themselves to have an interest in the goods and to be responsible for their importation.

39.   KAL willfully disregarded their duties as a customs broker in filing the Fayco Entry documents for the Infringing Nike Product.

40.   KAL also acted as the customs broker and Proway and Capital Freight acted as freight forwarder for no less than twenty (20) other shipments (hereinafter "Additional Unauthorized Entries") allegedly on behalf of Fayco that were not seized by Customs, but again were never authorized by Fayco.   Upon information and belief,

the entry documentation filed for these Additional Unauthorized Entries was based upon the same fraudulent Fayco POA received from Proway and/or Capital Freight and based on additional fraudulent shipping documents forwarded from Proway and/or Capital Freight to KAL.

41.    The acts of the Defendants in importing, distributing, transporting, arranging for, or assisting in and/or causing the importation, distribution, transportation, in interstate commerce of the Infringing Nike Product: (a) are likely to cause confusion and mistake among the consuming public that all such Infringing Nike Product originates with Nike; (b) are likely to cause confusion and mistake among the consuming public that there is some affiliation, connection or association between Defendants and Nike; and/or (c) are likely to cause confusion and mistake among the consuming public that said Infringing Nike Product are being offered to the consuming public with the sponsorship or approval of Nike.

42.    Defendants imported, distributed, transported, or assisted in and/or caused the importation, distribution and/or transportation of the Infringing Nike Product knowing the Infringing Nike Product bore counterfeits of the Nike Trademarks, or willfully ignored whether the Infringing Nike Product bore counterfeits of the Nike Trademarks. Defendants engaged in a deliberate effort to cause confusion and mistake among the consuming public as to the source, affiliation and/or sponsorship of said Infringing Nike Product and, to gain to Defendants, the benefit of the enormous goodwill associated with the Nike Trademarks.    The aforementioned acts of Defendants are also likely to dilute, and have diluted, the distinctive quality of the Nike Trademarks.

43.    Defendants' actions constitute a direct infringement in violation of the Lanham Act or, such conduct makes the Defendants contributorily and/or vicariously liable for the infringement through their assistance that caused and/or resulted in importation, distribution and/or transportation of the Infringing Nike Product.

Nike v. KAL America, Inc.: Complaint

## FIRST CLAIM FOR RELIEF
### (TRADEMARK COUNTERFEITING)

44.     Nike repeats each and every allegation set forth in paragraphs 1 through 43 above as if fully set forth herein.

45.     The Nike Trademarks, as they are being used by Defendants, are identical to or substantially indistinguishable from the registered Nike Trademarks. Accordingly, Defendants have engaged in trademark counterfeiting in violation of 15 U.S.C. § 1114.

46.     Such conduct on the part of Defendants has injured Nike in an amount to be determined at trial and has caused and threatens to cause irreparable injury to Nike for which Nike has no adequate remedy at law.

## SECOND CLAIM FOR RELIEF
### (TRADEMARK INFRINGEMENT)

47.     Nike repeats each and every allegation set forth in paragraphs 1 through 46 above as if fully set forth herein.

48.     Defendants' use of the Nike Trademarks, without Nike's consent, constitutes trademark infringement in violation of 15 U.S.C. § 1114, in that, among other things, such use is likely to cause confusion, deception and mistake among the consuming public and trade as to the source, approval or sponsorship of footwear and other products bearing counterfeit and infringing Nike Trademarks.

49.     Such conduct on the part of Defendants has injured Nike in an amount to be determined at trial and has caused and threatens to cause irreparable injury to Nike for which Nike has no adequate remedy at law.

### THIRD CLAIM FOR RELIEF
### (FALSE DESIGNATION OF ORIGIN)

50.    Nike repeats each and every allegation set forth in paragraphs 1 through 49 above as if fully set forth herein.

51.    Defendants' use of the Nike Trademarks, without Nike's consent, constitutes the use of false or misleading designations of origin and/or the making of false or misleading representations of fact in violation of 15 U.S.C. § 1125(a), in that, among other things, such use is likely to cause confusion, deception and mistake among the consuming public and trade as to the source, approval or sponsorship of the footwear imported and distributed by Defendants bearing counterfeit and infringing Nike Trademarks.

52.    Such conduct on the part of Defendants has injured Nike in an amount to be determined at trial and has caused and threatens to cause irreparable injury to Nike for which Nike has no adequate remedy at law.

### FOURTH CLAIM FOR RELIEF
### (IMPORTATION OF GOODS BEARING INFRINGING MARKS OR NAMES)

53.    Nike repeats each and every allegation set forth in paragraphs 1 through 52 above as if fully set forth herein.

54.    Defendants imported Infringing Nike Product bearing unauthorized reproductions, counterfeits, copies and colorable imitations of the Nike Trademarks in violation of 15 U.S.C. § 1124.

55.    Defendants have materially contributed to the importation of Infringing Nike Product bearing unauthorized reproductions, counterfeits, copies and colorable imitations of the Nike Trademarks.

Nike v. KAL America, Inc.: Complaint

56. Defendants have realized gains and profits from the importation, and/or assisting in the importation, of the Infringing Nike Product bearing unauthorized reproductions, counterfeits, copies and colorable imitations of the Nike Trademarks.

57. Such conduct on the part of Defendants has injured Nike in an amount to be determined at trial and has caused and threatens to cause irreparable injury to Nike for which Nike has no adequate remedy at law.

### FIFTH CLAIM FOR RELIEF
### (VIOLATION OF TARIFF ACT)

58. Nike repeats each and every allegation set forth in paragraphs 1 through 57 above as if fully set forth herein.

59. Defendants imported Infringing Nike Product bearing unauthorized reproductions, counterfeits, copies and colorable imitations of the Nike Trademarks in violation of 19 U.S.C. § 1526(a).

60. Nike has filed copies of its federal trademark registrations covering one or more of the Nike Trademarks with the Department of Treasury and U.S. Customs.

61. Such conduct on the part of Defendants has injured Nike in an amount to be determined at trial and has caused and threatens to cause irreparable injury to Nike for which Nike has no adequate remedy at law.

### PRAYER FOR RELIEF

WHEREFORE, Nike demands judgment as follows:

A. Permanently enjoining and restraining Defendants, their respective subsidiaries, affiliates, divisions, officers, directors, principals, servants, employees, successors and assigns, and all those in active concert or participation with them:

1. From importing, exporting, assisting in the importation or exportation, manufacturing, procuring, distributing, shipping, retailing, selling, offering for sale, marketing, advertising, or trafficking in any

Nike v. KAL America, Inc.: Complaint

merchandise not authorized by Nike and bearing unauthorized simulations, reproductions, counterfeits, copies, or colorable imitations of the Nike Trademarks which are likely to cause confusion, or bearing a design that is of a substantially similar appearance to the Nike Trademarks listed in this complaint;

2.     From passing off, inducing, or enabling others to sell or pass off as authentic products produced by Nike or otherwise authorized by Nike, any product not manufactured by Nike or produced under the control or supervision of Nike and approved by Nike, which uses any of the Nike Trademarks listed in this complaint;

3.     From committing any act calculated to cause purchasers to believe that products from Defendants are those sold under the control and supervision of Nike, or are sponsored, approved, or guaranteed by the Nike, or are connected with and produced under the control or supervision of Nike;

4.     From transacting customs business in the name of a principal when acting as a licensed customs broker without first receiving a valid POA from said principal.  In compliance with this requirement, KAL shall take reasonable steps to investigate and confirm the authenticity of all POAs it receives prior to filing any customs entry document or otherwise conducting customs business.  Such reasonable investigation shall include, but not be limited, to fully complying with one of the following three:

      a)     KAL shall:

            (i)     receive and have in its possession a fully notarized POA granting authority from the Importer to the Customs Broker prior to the filing of any entry

Nike v. KAL America, Inc.: Complaint

documents.  The notary of such POA shall record on the notarized POA the full name and address as detailed on the U.S. (federal or state government) issued passport, driver's license or identity card (hereinafter collectively "U.S. Government ID") bearing the signatory's photograph, together with the U.S. Government ID number(s) and Governmental agency which issued the U.S. Government ID; and

(ii)   contact the Importer directly, via a telephone number listed on the Importer's own website or as identified on a publicly available database such as yellow pages, white pages, or as identified through an open source web based search through Google® or the like, and confirm that the person listed on the POA works for the Importer, holds the position with the Importer indicated on the POA, and has authority to bind the Importer. In this telephone call the Customs Broker shall also confirm that the Importer is aware of the shipment(s) for which the Customs Broker is filing entry. In carrying out this verification, the Customs Broker shall make a contemporaneous record of the verification call including recording the time, date and telephone number called, the name and position of the person contacted at the Importer, and any limitations or reservations given by the contact person concerning the verification;

or

b) KAL shall:

(i) receive and have in its possession a fully notarized POA granting authority from the Importer to the Customs Broker prior to the filing of any entry documents. The notary of such POA shall record on the notarized POA the full name and address as detailed on the U.S. Government ID bearing the signatory's photograph, together with the U.S. Government ID number(s) and Governmental agency which issued the U.S. Government ID; and

(ii) receive payment for all of its services directly from the Importer prior to the filing of the entry documents. Such payment shall be made via business check or wire transfer and either form of payment shall identify the identical Importer as detailed on the POA;

or

c) KAL shall:

(i) receive and have in its possession a fully executed POA granting authority from the Importer to the Customs Broker prior to the filing of any entry documents; and

(ii) contact the Importer directly, via a telephone number listed on the Importer's own website or as identified on a publicly available database such as yellow pages, white pages, or as identified through an open source web based search through Google® or the

like, and confirm that the person listed on the POA works for the Importer, holds the position with the Importer indicated on the POA, and has authority to bind the Importer. In this telephone call the Customs Broker shall also confirm that the Importer is aware of the shipment(s) for which the Customs Broker is filing entry. In carrying out this verification, the Customs Broker shall make a contemporaneous record of the verification call including recording the time, date and telephone number called, the name and position of the person contacted at the Importer, and any limitations or reservations given by the contact person concerning the verification; and

(iii)    receive a clear digital copy of a U.S. Government or State ID bearing a photograph of a principal, director, officer or other employee bearing the identical name of the individual who signed the POA and for whom the Customs Broker has verified with the Importer has capacity to bind the Importer.;

5.      In complying with Paragraph (4) above, where KAL receives a POA referral from another Customs Broker or from a freight forwarder (known as an "Authorizing Agent"), KAL is required to take reasonable steps to validate the identity of the individual who issued the original POA to the Authorized Agent consistent with Paragraph 4 above.

6.      In compliance with Paragraph 4 above, KAL is also required to maintain all records of its independent validations conducted pursuant to Paragraph 4, including any government identification reviewed.   All

Nike v. KAL America, Inc.: Complaint

documentation reviewed and all notes taken during any telephone conversations undertaken to validate any POA, shall be maintained for five (5) years from the date of the POA or the date on which such validation was conducted by Defendants, whichever is later.

7.    Proway and Capital Freight, when referring customs broker business to a licensed customs broker for any person or entity importing merchandise into the United States, shall fully cooperate with the licensed customs broker to assist the customs broker in validating the identity of the importer consistent with paragraphs A (4),(5) and (6) above, ensuring that such validation occurs prior to any entry being filed for said importer. If Proway or Capital Freight are unable to confirm such validation in writing prior to the filing of entry, Proway and Capital Freight shall have an independent obligation themselves to validate the importer's POA consistent with the requirements of paragraphs A (4),(5) and (6) above prior to entry being filed.

8.    Proway and Capital Freight from providing cargo transportation services for counterfeit or infringing goods which goods violate any United States registered trademark (hereinafter "Unauthorized Goods"), to and/or from any U.S. port, or filing or causing to be filed false information with CBP's Automated Manifest System (AMS), concerning such Unauthorized Goods, without first making a due diligence investigation into the authenticity and source of the transportation documentation upon which it relied to provide transportation services or to make any AMS filing concerning the Unauthorized Goods.  The Parties stipulate and agree that the following procedures, if fully and materially complied with by Proway and Capital Freight, shall meet the due diligence investigation requirement required by Section D of this Injunction:

Nike v. KAL America, Inc.: Complaint

a) Proway and Capital Freight shall:

(ii) receive contemporaneously with any referral of cargo transportation business from any new third party transportation company not located in the U.S. (hereinafter referred to as a "Foreign Freight Forwarder"), or at least once a year from any existing Foreign Freight Forwarder for which Proway and Capital Freight has transported cargo in the past to the United States, written confirmation that the Foreign Freight Forwarder is not providing non-vessel operating common carrier (NVOCC) services, or representing to the public or its customers that it is providing NVOCC services, as that term is defined by 46 CFR §515.2(l); or

(ii) if Proway and Capital Freight knows through its own investigation or knowledge, or after receiving written confirmation from a Foreign Freight Forwarder as provided in subsection (i) above, that the Foreign Freight Forwarder is providing NVOCC services to the United States or representing to the public or its customers that it is providing NVOCC services, as that term is defined by 46 CFR §515.2(l), that Proway and Capital Freight not accept cargo for transportation to the United States from the Foreign Freight Forwarder unless Proway and Capital Freight has confirmed the Foreign Freight Forwarder is also registered and bonded through the FMC as a foreign NVOCC,

and;

b)  Proway and Capital Freight shall verify the authenticity and source of any documentation, including shipping instructions, for any cargo for which it provides transportation services to or from the United States, prior to providing such transportation services by one of the three procedures identified in subsections (i) through (iii) below:

(i)  Proway and Capital Freight shall communicate directly with the identified shipper of the goods, as that shipper is identified on the shipping documentation or shipping instructions (hereinafter "Shipper"), by telephone, facsimile or email. Proway and Capital Freight shall communicate with the Shipper via a telephone number, facsimile number, or email address publically associated with the Shipper in any government database or publication, or at a website where the second level domain of the website domain name incorporates the Shipper's corporate name and the website is on its face operated by the Shipper, or as provided by any publically listed and generally recognized as reliable Internet database (hereinafter referred to as a "Reliable Contact Point"). Proway and Capital Freight shall, when communicating with the Shipper, confirm that the information contained in the shipping instructions or shipping documentation is accurate and truthful before providing transportation or importation services. As a material part of this confirmation process, Proway and Capital Freight shall make a written record of the communication. If made by telephone, Proway and

Capital Freight shall note the date, telephone number called, the person or persons contacted at the Shipper, their position with the Shipper, and, if the Shipper questioned any of the information contained in the shipping instructions or shipping documents, Proway and Capital Freight shall note what steps it took to further confirm this information. If the direct communication occurs via email or facsimile, Proway and Capital Freight will ensure that a written record is made of the confirmation containing the same material information as if the confirmation was made via telephone. Additionally, Proway and Capital Freight shall maintain a record of the source of the Reliable Contact Point;

or

(ii)    Proway and Capital Freight shall communicate directly with the identified Ultimate Consignee of the goods, as that Ultimate Consignee is identified on the shipping documentation or shipping instructions, so long as the identified Ultimate Consignee does not appear on the face of the shipping instructions or shipping documents to be a freight forwarder, receiving agent or other third party not intended to be ultimate recipient of the subject goods. Such communication shall occur by telephone, facsimile or email, and the contact information must be obtained via a Reliable Contact Point. As a material part of this confirmation process, Proway and Capital Freight shall make a written record of the communication. If made by telephone, Proway and Capital Freight shall note the date,

telephone number called, the person or persons contacted at the Ultimate Consignee, their position with the Ultimate Consignee, and, if the Ultimate Consignee questioned any of the information contained in the shipping instructions or shipping documents, Proway and Capital Freight shall note what steps it took to further confirm this information. If the direct communication occurs via email or facsimile, Proway and Capital Freight shall ensure that a written record is made of the communication containing the same material information as if the communication was made via telephone. Additionally, Proway and Capital Freight shall maintain a record of the source of the Reliable Contact Point;

or

(iii) Proway and Capital Freight shall receive written verification from any Foreign Freight Forwarder or NVOCC (collectively referred to as "Referring Party") which refers it any shipment for transportation, or is passing on such a shipment to Proway and Capital Freight as a co-loaded shipment, confirming or attesting to the following information:

(A)   the Referring Party represents that it has had direct contact with the Shipper or Ultimate Consignee and verified the source and authenticity of the shipping instructions and/or shipping documentation through the requirements of sections paragraphs 8. b)(i) and (ii) of this Injunction; and

(B)    the Referring Party has verified that any cargo container identified on or in any shipping instructions and/or shipping documents related to the transportation of the cargo was in fact delivered and picked up from the location associated with the Shipper in such shipping instructions or shipping documents; and

(C)    the Referring Party provides Proway and Capital Freight with its full address, telephone number, facsimile number, email address, (which information Proway and Capital Freight independently verifies through government or publically available databases on the Internet), its government identification number, and a copy of its business and/or   NVOCC license or registration. Copies of such licenses or registrations shall be maintained by Proway and Capital Freight so long as it receives shipments from each Referring Party; and

(D)    the Referring Party agrees in writing to indemnify any third parties harmed by Proway and Capital Freight's transportation, or assisting in the transportation, of cargo which cargo contains Unauthorized Goods and was referred by the Referring Party to Proway and Capital Freight.

and

c)    Proway and Capital Freight shall maintain for a period of five years from the date of transportation all records related to its

transportation and/or importation, or the assisting in the transportation or importation, of goods to or from the United States via ocean carrier, including but not limited to shipping instructions, bills of lading, arrival notices, packing lists, commercial invoices, invoices or bills for transportation or importation services rendered to or from Proway and Capital Freight, entry documents, export documents, AMS entry information, ISF information, CBP or FMC inquiries, customer identity verification information, customer banking information used for any payment, copies of any government identifications reviewed or relied upon, powers of attorney, and relevant communications with any relevant shipper, consignee, VOCC, NVOCC, freight forwarder or other interested party (collectively referred to as Proway and Capital Freight's "Shipping File");

and

d)    If Proway and Capital Freight is put on written notice by Nike, or by any U.S. or Chinese government agency, that any Referring Party has previously transmitted false or misleading transportation documentation involving the transportation or importation of Unauthorized Goods into the United States (hereinafter referred to as an "Identified Referring Party"), Proway and Capital Freight shall cease accepting any further cargo referrals or co-loading with said Identified Referring Party within twenty (20) days of receiving such notice.

B.    Directing such other relief as the Court may deem appropriate to prevent any erroneous impression among the trade and/or public that any product at issue in this case that has been offered for sale, sold or otherwise circulated or promoted by

Nike v. KAL America, Inc.: Complaint

Defendants is authorized by Nike or is related to or associated in any way with Nike's products.

C.     Requiring Defendants to account for and pay over to Nike, all profits realized by their wrongful acts and directing that such profits be trebled due to Defendants' willful actions.

D.     Awarding Nike, at its election, statutory damages in the amount of $2,000,000.00 per mark for each type of good in connection with which Defendants used counterfeits of the Nike Trademarks.

E.     Awarding Nike its costs and reasonable attorneys' and investigatory fees and expenses, together with pre-judgment interest.

F.     Directing that this Court retain jurisdiction of this action for the purpose of enabling Plaintiff to apply to the Court at any time for such further orders and interpretation or execution of any order entered in this action for the modification of any such order, for the enforcement or compliance therewith and for the punishment of any violations thereof.

G.     Awarding Nike such other and further relief as the Court may deem just and proper.

Dated: July 14, 2015                    J. Andrew Coombs, A Professional Corp.


                                        By:_____
                                            J. Andrew Coombs
                                            Annie S. Wang


                                        Michael W.O. Holihan
                                        Holihan Law
                                        1101 North Lake Destiny Road, Suite 275
                                        Maitland, FL 32751
                                        Telephone:  (407) 660-8575
                                        Facsimile:  (407) 660-0510

                                        Attorneys for Plaintiff Nike, Inc.

# DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff Nike, Inc. hereby demands a trial by jury of all issues so triable.

Dated: July 14, 2015

J. Andrew Coombs, A Professional Corp.

By:_____
J. Andrew Coombs
Annie S. Wang

Michael W.O. Holihan
Holihan Law
1101 North Lake Destiny Road, Suite 275
Maitland, FL 32751
Telephone:  (407) 660-8575
Facsimile:   (407) 660-0510

Attorneys for Plaintiff Nike, Inc.

# EXHIBIT A

# EXHIBIT A

#5938 P.004/005

02/06/2013 16:00

# CAPITAL FREIGHT MANAGEMENT
1111 CORPORATE CENTER DR., #103, MONTEREY PARK, CA 91754
TEL:(323)526-1667   FAX:(323)261-4018

DATE: 02/06/2013

## ARRIVAL NOTICE/INVOICE

LOT NO.: CAP27398
INV NO.: 0801653

CONSIGNEE          M1                    NOTIFY PARTY

FAYGO INDUSTRIES INC.                   CAPITAL FREIGHT MANAGEMENT, INC
T:516-791-5812    F:                    T:323-526-1667    F:323-261-4018
ATTN: XING                              ATTN: GARY/DEREK

                                        ISSUED BY: MICHAEL
SHIPPER      : FUJIAN DEHUA XINFENG CERAMICS    H B/L # : CCLSZX30110172
VESSEL NAME  : CMA CGM DALILA V.765S            TYPE    : CY - CY
MASTER B/L # : MAEU951050565
SCAC CODE    : CCJL   SZX30110172

PORT OF LOADING   : HUANGPU                      E.T.D. : 01/15/2013
PORT OF DISCHARGE :                 4601         E.T.A. : 02/11/2013
PLACE OF DELIVERY :                              E.T.A. : 02/11/2013
CARGO LOCATION    : (E425) APM TERMINAL-BERTH 88 / TEL: 908-558-6000

IT #, DATE, PLACE :                              / TEL: 908-558-6000
FINAL LOCATION    : (E425) APM TERMINAL-BERTH 88 FAX:

PIECES/P.O. NO        DESCRIPTION               WEIGHT/MEASUREMENT
  560 Pkgs            POLYRESIN                 25108.19 LBS
                      CERAMIC WARE              67.41 CBM

CONTAINER NUMBER      FREIGHT AND CHARGES        PREPAID      COLLECT

MSKU0012265/CY40      OCEAN FREIGHT              $ 5,000
                      D.D.C.
                      HANDLING FEES
                      INLAND TRUCKING

                      TOTAL CHARGES

REMARK:
1. **THE ORIGINAL HOUSE B/L IS NOT REQUIRED.**
2. RELEASE OF ABOVE FREIGHT TAKES AT LEAST 24-48 HOURS UPON RECEIPT OF YOUR FULL PAYMENT OF ABOVE CHARGES AND PROPERLY ENDORSED BILL OF LADING. PLS MAKE PAYMENT PAYABLE TO "CAPITAL FREIGHT MANAGEMENT"
3. PLS ARRANGED PICK-UP OF YOUR FREIGHT AND RETURN OF CONTAINER WITHIN THE FREE-TIME OTHERWISE YOU SHALL BE RESPONSIBLE FOR ANY DEMMURAGE/DETENTION OR ANY OTHER CHARGES TO BE IMPOSED BY CARRIER OR WAREHOUSE.
4. PLS CALL WHSE/PIER TO CONFIRM ABOVE DATE/LOCATION OF CARGO AVAILABILITY PRIOR DELIVERY AS CHANGES MAY OCCUR BEYOND OUR CONTROL.
5. PLEASE REFER TO THE REVERSE SIDE OF THE B/L FOR THE LIMIT OF OUR AGENT AND OUR LIABILITY PERTAINING TO YOUR SHIPMENT.
6. COMPANY CHECK NO GREATER THAN $1000.00, MUST BE CASHIER OR BROKER CHECK, NO PERSONAL CHECK OR CHECK COPY WILL BE ACCEPTED.
   FOR WIRE INFORMATION, PLEASE CALL PROKMY FORWARDING INC.

**THANK YOU FOR YOUR BUSINESS**

PAPERLESS   Page 1
Form Approved OMB No. 1651-0022
EXP. 03-31-2012

DEPARTMENT OF HOMELAND SECURITY
U.S. Customs and Border Protection

**ENTRY SUMMARY**

| 1. Filer Code/Entry No. BRI-0023254-6 | 2. Entry Type 01 ABI/A | 3. Summary Date 02/25/13   202 |
|---|---|---|
| 4. Surety No. 856 | 5. Bond Type 8 | 6. Port Code 4601 | 7. Entry Date 02/11/13 |

11. Import Date 02/11/13

| 8. Importing Carrier CMA CGM DALILA | 9. Mode of Transport 11 | 10. Country of Origin CN |
| 12. B/L or AWB No. MAEU 951050565, SZX30110172 | 13. Manufacturer ID CNFUJDEHDEH | 14. Exporting Country CN |

15. Export Date 01/15/13

| 16. I.T. No. | 17. I.T. Date | 18. Missing Docs | 19. Foreign Port of Lading 57072 | 20. U.S. Port of Unlading 4601 |

| 21. Location of Goods/G.O. No. E425 Voyage: 765S | 22. Consignee No. 22-341084800 | 23. Importer No. 22-341084800 | 24. Reference No. |

25. Ultimate Consignee Name and Address
FAYCO INDUSTRIES INC
3 ATLANTIC ST

26. Importer of Record Name and Address
FAYCO INDUSTRIES INC
3 ATLANTIC ST

Destination: NY
City PLAINSBORO                Customer Reference # CAP27398
State NJ  Zip 08536-3066

City PLAINSBORO                State NJ  Zip 08536-3066

| 27. Line No. | 28. Description of Merchandise | | | | 32. | 33. | | 34. Duty and I.R. Tax | |
|---|---|---|---|---|---|---|---|---|---|
| | 29. A. HTSUS No. B. ADA/CVD No. | 30. A. Grossweight B. Manifest Qty. | 31. Net Quantity in HTSUS Units | | A. Entered Value B. CHGS C. Relationship | A. HTSUS Rate B. ADA/CVD Rate C. IRC Rate D. Visa No. | | Dollars | Cents |
| | | | 560 CTN | | | | | | |
| 001 | PICTURE FRAMES 3924.90.2000 | 2,524 KG | X | | $4,748 C $1,108 N | 3.4% | | | $161.43 |
| | | | | | | | | | |
| | | 499 – Merchandise Processing Fee 501 – Harbor Maintenance Fee | | | | 0.3464% 0.1250% | | | $16.45 $5.94 |
| 002 | OTHER PLASTIC MAT;OTH,OTHER 3926.90.9980 | 2,455 KG | X | | $4,619 C $1,078 N | 5.3% | | | $244.81 |
| | | | | | | | | | |
| | | 499 – Merchandise Processing Fee 501 – Harbor Maintenance Fee | | | | 0.3464% 0.1250% | | | $16.00 $5.77 |
| 003 | ORNM CERM ART OTH NOT CHINA; S 6913.10.5000 | 6,410 KG | 23.00 DPC | | $12,057 C $2,814 | FREE | | | $0.00 |

| Other Fee Summary for Block 39 | | 35. Total Entered Value | **CBP USE ONLY** | | **TOTALS** | |
|---|---|---|---|---|---|---|
| 499 – MPF | $74.22 | $ 21,424 | A. LIQ CODE | B. Ascertained Duty | 37. Duty | $406.24 |
| 501 – HMF | $26.78 | Total Other Fees | | | | |
| | | $ 101.00 | REASON CODE | C. Ascertained Tax | 38. Tax | |

36. DECLARATION OF IMPORTER OF RECORD (OWNER OR PURCHASER) OR AUTHORIZED AGENT

| | D. Ascertained Other | 39. Other $101.00 |
|---|---|---|
| | D. Ascertained Total | 40. Total $507.24 |

I declare that I am the [  ] Importer of record and that the actual owner, purchaser, or consignee for CBP purposes is as shown above, OR [X] owner or purchaser or agent thereof. I further declare that the merchandise [X] was obtained pursuant to a purchase or agreement to purchase and that the prices set forth in the invoices are true, OR [  ] was not obtained pursuant to a purchase or agreement to purchase and the statements in the invoices as to value or price are true to the best of my knowledge and belief. I also declare that the statements in the documents herein filed fully disclose to the best of my knowledge and belief the true prices, values, quantities, rebates, drawbacks, fees, commissions, and royalties and are true and correct, and that all goods or services provided to the seller of the merchandise either free or at reduced cost are fully disclosed.

I will immediately furnish to the appropriate CBP officer any information showing a different statement of facts.

| 41. DECLARANT NAME  TITLE Kal America/Atty-In-Fact | SIGNATURE | DATE 02/06/13 |
|---|---|---|
| 42. Broker/Filer Information (Name, address, phone number) KAL AMERICA INC 803 S. Inglewood Ave #101 Inglewood, CA 90301  3106719800 | 43. Broker/Importer File No. 0023254 / CAP27398 | |

CBP Form 7501 (06/09)

Cashier

EXHIBIT A PAGE 28

PAPERLESS   Page 2
OMB No. 1651-0022
EXP. 03-31-2012

DEPARTMENT OF HOMELAND SECURITY
U.S. Customs and Border Protection

ENTRY SUMMARY CONTINUATION SHEET
1. Filer Code/Entry No.
BRI-0023254-6

| 27. Line No. | 28. Description of Merchandise | | | 32. A. Entered Value B. CHGS C. Relationship | 33. A. HTSUS Rate B. ADA/CVD Rate C. IRC Rate D. Visa No. | 34. Duty and I.R. Tax | |
|---|---|---|---|---|---|---|---|
| | 29. A. HTSUS No. B. ADA/CVD No. | 30. A. Grossweight B. Manifest Qty. | 31. Net Quantity in HTSUS Units | | | Dollars | Cents |
| | 499 - Merchandise Processing Fee 501 - Harbor Maintenance Fee | | | N | 0.3464% 0.1250% | | $41.77 $15.07 |
| | Totals for Invoice XFFY20130019 | | Invoice Value 26,530.00 USD | +/- MMV -5,106.00 USD | Exchange 1.00000 | Entered Value 21,424.00 USD | |

EXHIBIT A PAGE 29

Cashier

CBP Form 7501 (06/09)

Print to PDF without this message by purchasing novaPDF (http://www.novapdf.com/)

DEPARTMENT OF HOMELAND SECURITY
U.S. Customs and Border Protection

Page: 1
ABI CERTIFIED
CST# 202

**ENTRY/IMMEDIATE DELIVERY**
**KAL AMERICA INC**
803 S. Inglewood Ave #101
Inglewood, CA 90301 3106719800 Fax: 3106779800

Form Approved
OMB No. 1651-0024
Exp. 01-31-2012

19 CFR 142.3, 142.16, 142.22, 142.24

| 1. ARRIVAL DATE | 2. ELECTED ENTRY DATE | 3. ENTRY TYPE CODE/NAME | 4. ENTRY NUMBER |
|---|---|---|---|
| 021113 | 021113 | 01 | BRI-0023254-6 |
| 5. PORT | 6. SINGLE TRANS. BOND | 7. BROKER/IMPORTER FILE NUMBER | |
| 4601 | | 0023254 / CAP27398 | |
| | 8. CONSIGNEE NUMBER | | 9. IMPORTER NUMBER |
| | 22-341084800 | | SAME |
| 10. ULTIMATE CONSIGNEE NAME | | 11. IMPORTER OF RECORD NAME | |
| FAYCO INDUSTRIES INC | | SAME | |
| 3 ATLANTIC ST | | | |
| PLAINSBORO, NJ 08536-3066 | | | |
| 12. CARRIER NAME | 13. VOYAGE/FLIGHT/TRIP | 14. LOCATION OF GOODS-CODE (S)/NAME(S) | |
| MAEU | 765S | E425 APM TERMINALS | |
| 15. VESSEL CODE/NAME | | | |
| CMA CGM DALILA | | | |
| 16. U.S. PORT OF UNLADING | 17. MANIFEST NUMBER | 18. G.O. NUMBER | 19. TOTAL VALUE |
| 4601 | | | 21,424 |

20. DESCRIPTION OF MERCHANDISE

POLYRESIN CERAMIC WARE

| 21. TSCA/NB CODE | 22. IT/BL/AWB NO | 23. MANIFEST QUANTITY | 24. H.S. NUMBER | 25. COUNTRY OF ORIGIN | 26. MANUFACTURER NO. |
|---|---|---|---|---|---|
| M | MAEU 951050565 | | 3924.90.2000 | CN | CNFUJDEHDEH |
| H | CGJL SZX30110172 | 560 CTN | 3926.90.9980 | CN | CNFUJDEHDEH |
| | | | 6913.10.5000 | CN | CNFUJDEHDEH |

**27. CERTIFICATION**

I hereby make application for entry/immediate delivery. I certify that the above information is accurate, the bond is sufficient, valid, and current, and that all requirements of 19 CFR Part 142 have been met.

SIGNATURE OF APPLICANT
X Kal America/Atty-In-Fact

PHONE NO.
3106719800

DATE
02/06/13

**28. CBP USE ONLY**

CUSTOMS AND ...
NEW YORKER AGENCY ... IS REQUIRED, NAMELY:
EXAMINATION AND TRANSFER ...
EXAM TEAM        ME
EXAM LOCATION        HM
EXAM ... CBP EXAMINATION REQUIRED, TO ...
THE CONTAINER HAS BEEN AUTHORIZED FOR ...
DENTRY REJECTED, BECAUSE ...

MSKU001 2265

**29. BROKER OR OTHER GOVT. AGENCY USE**
Containers:
MSKU0012265
Req. Exam at: E355 H&M INTERNATIONAL TRANSPORTATION
Transfer By:
Entry Bond [ ]          Carrier Bond [ ]
CHL Bond [ ]          CFS Bond [ ]
Paired Cities Req: Yes [ ]  No [X]

CBP OFFICER ... transfer
ALL OR ...
CONTAINER(S) ...
CONFIRM ... move to CES / ... ASE.
Confirm ... 
Regnaling contact ...

... BADGE #
DA... HAS BEEN RECEIVED FROM CBP VIA AR...
Kal America/Atty-In-Fact  02/11/13

... WE CERTIFY THIS A PROPER RELEASE

OCAL

Paperwork Reduction Act Statement: An agency may not conduct or sponsor an information collection and a person is not required to respond to this information unless it displays a current valid OMB control number and an expiration date. The control number for this collection is 1651-0024. The estimated average time to complete this application is 15 minutes. If you have any comments regarding the burden estimate you can write to U.S. Customs and Border Protection, Office of Regulations and Rulings, 799 9th Street, NW., Washington DC 20229.

CBP Form 3461 (10/09)

**EXHIBIT A PAGE 30**

02/06/2013  16:00



福建省德化鑫峰陶瓷有限公司
Fujian Dehua Xinfeng Ceramics Co.,Ltd

## INVOICE

BILL TO
FAYCO INDUSTRIES INC.
3 ATLANTIC STREET
PLAINSBORO, NJ 08536

TEL: 646-286-3698
ATTN: DENNIS WONG

INV. NO.: XFFY20130019
DATE: 10.01.13
PER S.S : CARTON
CONTAINER NO.: MSKU0012265
SHIPPING MARK: FAYCO
PAGE: 1

| NO | Descriptions | Qty.carton | Cost | Amount,USD |
|----|--------------|------------|------|------------|
| 1. | POLYRESIN PHOTO FRAME | 120 | 49.00 | $5,880.00 |
| 2. | POLYRESIN UMBRALLA STAND | 110 | 52.00 | $5,720.00 |
| 3. | CERAMIC FORTUNE CAT | 110 | 53.00 | $5,830.00 |
| 4. | CERAMIC PIGGY BANK | 120 | 45.00 | $5,400.00 |
| 5. | CERAMIC VASE | 100 | 37.00 | $3,700.00 |
| | TOTAL: | 560 | | $26,530.00 |

FOB GUANGZHOU,CHINA
SAY US DOLLARS TWENTY-SIX THOUSAND FIVE HUNDRED AND THIRTY ONLY.
SAY ONE (1) *40'HQ CONTAINER ONLY

BANK DETAILS:
FUJIAN DEHUA XINFENG CERAMICS CO., LTD
ACCOUNT NUMBER: 822605120307993024
CHINA CONSTRUCTION BANK FUJIAN DEHUA BRANCH

ISSUE BY

RECEIVER BY



福建省德化鑫峰陶瓷有限公司
**Fujian Dehua Xinfeng Ceramics Co.,Ltd**

## PACKING LIST

| BUYER: | INV. NO. : XFFY20120019 |
| --- | --- |
| FAYCO INDUSTRIES INC. | DATE: 10.01.13 |
| 3 ATLANTIC STREET | PER S.S : CARTON |
| PLAINSBORO, NJ 08536 | CONTAINER NO.: MSKU0012265 |
| | SHIPPING MARK: FAYCO |
| TEL: 646-286-3698 | PAGE: 1 |
| ATTN: DENNIS WONG | |

| CARTON NO. | DESCRIPTIONS | QUANTITY |
| --- | --- | --- |
| XF001 | POLYRESIN PHOTO FRAME | 120 |
| XF002 | POLYRESIN UMBRALLA STAND | 110 |
| XF003 | CERAMIC FORTUNE CAT | 110 |
| XF004 | CERAMIC PIGGY BANK | 120 |
| XF005 | CERAMIC VASE | 100 |
| TOTAL: | | 560 |

TOTAL: SAY FIVE HUNDRED AND SIXTY CARTONS ONLY.

............................                    ...................................
ISSUE BY                                          RECEIVER BY

EXHIBIT A PAGE 32

02/06/2013   16:01                                                      #5936 P.005/005

# E S T L                                                            Bill of Lading

| SHIPPER | BL NUMBER |
|---|---|
| FUJIAN DEHUA XINFENG CERAMICS CO., LTD<br>FENG SHU SHAN INDUSTRIAL PARK, LONG XUN<br>TOWN, DEHUA, FUJIAN, CHINA | CCLSZX30110172 |
|  | **EXPORT REFERENCE** |

| CONSIGNEE | FORWARDING AGENT-REFERENCE |
|---|---|
| FAYCO INDUSTRIES INC,<br>3 ATLANTIC STREET PLAINSBORO, NJ 08536<br>TEL: 646-286-3688<br>ATTN: DENNIS WONG |  |
|  | **POINT AND COUNTRY OF ORIGIN** |

| NOTIFY PARTY | DOMESTIC ROUTING/EXPORT INSTRUCTIONS |
|---|---|
| SAME AS CONSIGNEE |  |

| PLACE OF RECEIPT | FOR CARGO-RELEASE PLEASE APPLY TO: |
|---|---|

| OCEAN VESSEL | VOY NO. | PORT OF LOADING |
|---|---|---|
| CMA CGM DALILA V.766S | | HUANGPU |

PROWAY FORWARDING INC
1111 CORPORATE CENTER DRIVE,
SUITE# 103, MONTEREY PARK, CA 91754

| PORT OF DISCHARGE | PLACE OF DELIVERY |
|---|---|
| NEWARK NJ | NEWARK NJ |

PARTICULARS FURNISHED BY SHIPPER-CARRIER NOT RESPONSIBLE   TEL 323-261-1867 / FAX  323-261-4018

| MARKS AND NUMBERS<br>CONTAINER NO. & SEAL NO. | NO. OF CONTAINERS<br>OR PACKAGES | TYPE OR KIND OF CONTAINER OR PACKAGES DESCRIPTION OF GOODS | GROSS WEIGHT | MEASUREMENT |
|---|---|---|---|---|
| FAYCO | 560<br>CTNS | SHIPPER'S LOAD & COUNT & SEAL<br>1*40HQ CONTAINER(S) S.T.C. CY/CY<br><br>POLYRESIN<br>CERAMIC WARE | 11358.50<br>KGS | 67.41<br>CBM |

TELEX RELEASE

THIS SHIPMENT CONTAINES NO SOLID          SHIPPED ON BOARD
WOOD PACKING MATERIALS.                    2013-1-15

| FREIGHT & CHARGES | R/TONS | RATES | PER | PREPAID | COLLECT |
|---|---|---|---|---|---|
| CNTR NO.: /SEAL NO.:<br>MSKU0012265 / CN4289728 /40HQ | | | | | |

| PREPAID AT | PAYABLE AT | NO. OF ORIGINAL B/L | PLACE OF B/L ISSUE | DATED |
|---|---|---|---|---|
| **FREIGHT PREPAID** | | | | |

Received by CARRIER for shipment between port of loading and port of discharge, and for arrangement or
procurement of pre-carriage from place of receipt and on-carriage to place of delivery, where stated above, the
goods as specified above in apparent good order and condition unless otherwise stated. The goods to be delivered at
the above mentioned port of discharge or place of delivery, whichever applicable, subject always to the exceptions,
limitations, conditions and liberties set out on the reverse side hereof, to which the Shipper and /or Consignee agrees
in accepting this Bill of Lading.
NE-138

IN WITNESS WHEREOF three (3) original Bills of Lading have
been signed, not otherwise stated above, one of which being
accomplished the others shall be void.

11/05/2010  16:22                           13476171687              TO:13232614018          #5852 P.005/005
SEP-23-2010 12:41  FROM:                                                                     P.1/1

## CUSTOMS POWER OF ATTORNEY
### and
### Acknowledgement of Terms and Conditions of Service

✓ appropriate box:

☐ Individual
☐ Partnership
☐ Corporation
☐ Sole Proprietorship
☐ Limited Liability Company

I.R.S. # 22-3410848

KNOW ALL MEN BY THESE PRESENTS: That ✓ Fayco Industries, INC. doing

business as a ✓ Corporation under the laws of the State of New Jersey

residing or having a principal place of business at 3 Atlantic St. Plainsboro NJ Vat 36

appoints ✓ KAL AMERICA, INC. officers, employees, and/or specifically authorized agents, to act for and

on its behalf as a true and lawful agent and attorney of the grantor for and in the name, place and stead of said grantor, from this date,

in the United States (the "Territory") either in writing, electronically, or by other authorized means, to:

Make, endorse, sign, declare, or swear to any customs entry, withdrawal, declaration, certificate, bill of lading, carnet or any other documents required by law or regulation in connection with the importation, exportation, transportation, of any merchandise in or through the customs territory, shipped or consigned by or to said grantor;

Perform any act or condition which may be required by law or regulation in connection with such merchandise deliverable to said grantor; to receive any merchandise;

Make endorsements on bills of lading conferring authority to transfer title; make entry or collect drawback; and to make, sign, declare, or swear to any statement or certificate required by law or regulation for drawback purposes, regardless of whether such document is intended for filing with Customs;

Sign, seal, and deliver for and as the act of said grantor any bond required by law or regulation in connection with the entry or withdrawal of imported merchandise or merchandise exported with or without benefit of drawback, or in connection with the entry, clearance, lading, unlading or navigation of any vessel or other means of conveyance owned or operated by said grantor, and any and all bonds which may be voluntarily given and accepted under applicable laws and regulations, consignee's and owner's declarations provided for in section 485, Tariff Act of 1930, as amended, or affidavit or statements in connection with the entry of merchandise;

Sign and swear to any document and to perform any act that may be necessary or required by law or regulation in connection with the entering, clearing, lading, unlading, or operation of any vessel or other means of conveyance owned or operated by said grantor;

Authorize other Customs Brokers duly licensed within the territory to act as grantor's agent; to receive, endorse and collect checks issued for Customs duty refunds in grantor's name drawn on the Treasurer of the United States if the grantor is a nonresident of the United States, to accept service of process on behalf of the grantor;

And generally to transact Customs business, including filing of claims or protests under section 514 of the Tariff Act of 1930, or pursuant to other laws of the territories, in which said grantor is or may be concerned or interested and which may properly be transacted or performed by an agent and attorney;

Giving to said agent and attorney full power and authority to do anything whatever requisite necessary to be done in the premises as fully as said grantor could do if present and acting, hereby ratifying and confirming all that the said agent and attorney shall lawfully do by virtue of these presents;

This power of attorney to remain full force and effect until revocation in writing is duly given to and received by grantee (if the donor of this power of attorney is a partnership, the said power shall in no case have any force or effect in the United States after the expiration 2 years from the dates of its execution);

Grantor acknowledges receipt of Fayco Industries INC Terms and Conditions of Service governing all transactions between the Parties.

If the Grantor is a Limited Liability Company, the signatory certifies that he/she has full authority to execute this power on behalf

IN WITNESS WHEREOF, the said ✓ Fayco Industries. Inc.

caused these presents to be sealed and signed: (Signature)

(Capacity) ✓ president                    Date: 09/22/2010

Witness (if required)

If you are the importer of record, payment to the broker will not relieve you of liability for U.S. Customs charges (duties) taxes or other debts owed Customs) in the event the charges are not paid by the broker. Therefore, if you pay by check, Customs charges may be paid with a separate check payable to the "U.S. Customs Service" which shall be delivered to Customs by the broker. Important when wish to utilize this procedure must contact our office in advance to arrange timely receipt of duly checks.

-11-

FANG CHENG CHAN
Notary Public, State of New York
No. 01CH6002746
Qualified in Queens County
Certificate Filed in Queens County
Commission Expires 10-6-2010

EXHIBIT A PAGE 34

# EXHIBIT B

# EXHIBIT B

MAY 06 2013

0216401

1100 Raymond Boulevard
Newark, NJ 07102



**U.S. Customs and
Border Protection**

Lori Colbert, Swoosh Design
One Bowerman Drive
Beaverton, Oregon 97005

Re: Case Number 2013-4601-000515-01 SAM

Dear Madam:

In accordance with 19 CFR 133.21 articles bearing counterfeit trademarks are subject to seizure
and forfeiture.

Customs and Border Protection has seized goods which bear marks which constitute counterfeit
copies of the following trademark and is notifying you, the trademark holder, of the action:

Description of Trademark: Swoosh Design (Nike, INC.)
Customs and Border Protection Recordation Number: TMK 08-01010
U. S. Patent & Trademark Office Registration Number: 1323342

In accordance with 19 CFR 133.21, the following seizure information is provided.

Date of Importation: April 9, 2013
Port of Entry: New York/Newark
Description of Merchandise: Nike Air Max Sneakers
Quantity: 9,456 pairs
Name/address of Manufacturer: N/A
Name/address of Exporter: N/A
Name/Address of Importer: FAYCO Industries, 3 Atlantic Street, Plainsboro, NJ 08536
Country of Origin: China

In accordance with 19 CFR 133.21, you may obtain a sample of the seized goods upon request
provided you meet certain conditions.

Should further information be required, contact Ms. Sarah Musante at the Fines, Penalties and
Forfeitures Office at 973-368-6055. Inquiries should reference the case number.

Sincerely,

Edward P. Nagle
Director
Office of Fines, Penalties, and Forfeitures
Newark/New York Area

1100 Raymond Boulevard
Newark, NJ 07102

0216402   MAY 06 2013



**U.S. Customs and Border Protection**

Lori Colbert, Swoosh Design
One Bowerman Drive
Beaverton, Oregon 97005

APR 3 0 2013

Re: Case Number 2013-4601-000515-01 SAM

Dear Madam:

In accordance with 19 CFR 133.21 articles bearing counterfeit trademarks are subject to seizure and forfeiture.

Customs and Border Protection has seized goods which bear marks which constitute counterfeit copies of the following trademark and is notifying you, the trademark holder, of the action:

Description of Trademark: Drawing Mark, Swoosh Design (Nike, INC.)
Customs and Border Protection Recordation Number: TMK 05-00585
U. S. Patent & Trademark Office Registration Number: 1323343

In accordance with 19 CFR 133.21, the following seizure information is provided.

Date of Importation: April 9, 2013
Port of Entry: New York/Newark
Description of Merchandise: Red Nike Plastic Logo
Quantity: 2,800 Pieces
Name/address of Manufacturer: Fujian Dehua Xinfeng Ceramics Co., LTD
Name/address of Exporter: N/A
Name/Address of Importer: FAYCO Industries, 2 Atlantic Street, Plainsboro, NJ 08536
Country of Origin: China

In accordance with 19 CFR 133.21, you may obtain a sample of the seized goods upon request provided you meet certain conditions.

Should further information be required, contact Ms. Sarah Musante at the Fines, Penalties and Forfeitures Office at 973-368-6055. Inquiries should reference the case number.

Sincerely,

Edward P. Nagle
Director
Office of Fines, Penalties, and Forfeitures
Newark/New York Area

EXHIBIT B PAGE 36

# EXHIBIT C

# EXHIBIT C



EXHIBIT C PAGE 37

# EXHIBIT D

# EXHIBIT D



# EXHIBIT E

# EXHIBIT E



**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

271 Cadman Plaza East
Brooklyn, New York 11201

August 18, 2011

Honorable Jack B. Weinstein
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re: Nike Inc. v. Cathy Chiu Lam CHB et al.
CV-10-1163 (Weinstein, J.) (Levy, M.J.)

Dear Judge Weinstein:

The United States of America respectfully submits this letter in response to Your Honor's Order June 13, 2011 (Dkt. 72).

The United States is not in a position to comment specifically on the claims and defenses asserted in this action. However, the United States can provide general information about the role of the customs broker in import and export transactions. A customs broker is required to exercise "responsible supervision and control" over an import or export transaction. 19 C.F.R. § 111.28(a). "Responsible supervision and control" is defined as:

> that degree of supervision and control necessary to ensure the proper transaction of the customs business of a broker, including actions necessary to ensure that an employee of a broker provides substantially the same quality of service in handling customs transactions that the broker is required to provide . . .

19 C.F.R. § 111.1.

A customs broker, prior to engaging in an import or export transaction, must obtain a valid power of attorney from a principal. 19 C.F.R. § 141.46. As part of his or her obligation to exercise "responsible supervision and control", the customs broker must exercise reasonable care to ensure that the power of attorney in his or her possession is valid. Customs and Border Protection ("CBP") has published on its website a guidance to brokers, which lists methods by which brokers may validate a power of attorney. That guidance is annexed hereto. Pursuant to 19 U.S.C. § 1641(d)(1)(C), CBP may commence an administrative proceeding seeking monetary

2

penalties and/or revocation or suspension of license against a broker who fails to take exercise reasonable care to validate a power of attorney.  CBP has issued administrative rulings related to the obligations of a customs broker. These rulings are available at rulings.cbp.gov, which has a search function.

The United States hopes that the foregoing will be helpful to the Court and the parties.

Respectfully submitted,

LORETTA E. LYNCH
United States Attorney
Eastern District of New York

By:    /s
_____
ELLIOT M. SCHACHNER
Assistant United States Attorney
(718) 254-6053

cc:

All counsel of record
(Via ECF)

# EXHIBIT F

# EXHIBIT F



🇺🇸 Official website of the Department of Homeland Security

## U.S. Customs and Border Protection



# Validating the Power of Attorney

Because the Power of Attorney (POA) can authorize the movement of conveyances and merchandise into the United States, it is critical that it be examined carefully. By ensuring that each POA is valid, the broker joins U.S. Customs and Border Protection on the national security frontlines in verifying the data used to screen what enters this country.

In addition to security, the broker's own professional business interests and continuing obligation to demonstrate "reasonable care" require verification of the POA grantor's identity and legal authority (position in a company or partnership) to enter into a POA.

Here are some ways the broker can validate a Power of Attorney:

- To the greatest extent possible, have POAs completed in person so the grantor's personal identification (driver's license, passport, etc.) can be reviewed.
- Check applicable Web sites to verify the POA grantor's business and registration with State authorities.
- If the principal uses a trade or fictitious name in doing business, confirm that the name appears on the POA.
- Verify that the importer's name, importer number and Employer Identification Number (also known as the Federal Tax Identification Number) on the POA match what is in ACS.
- Check whether the POA grantor is named as a sanctioned or restricted person or entity by the U.S. Government. See the **Bureau of Industry and Security's Export Enforcement**.

_____

Tags:   **Trade**

**EXHIBIT F PAGE 41**